1  DENISE M. MINGRONE (SBN 135224)
   dmingrone@orrick.com
2  ROBERT L. URIARTE (SBN 258274)
   ruriarte@orrick.com
3  KAYVAN GHAFFARI (SBN 299152)
   kghaffari@orrick.com
4  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
5  Menlo Park, CA  94025-1015
   Telephone:  +1 650 614 7400
6  Facsimile:   +1 650 614 7401

7  Attorneys for Plaintiff
   SYNOPSYS, INC.

8

9

10            UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

12

13  SYNOPSYS, INC.,                      Case No. 3:19-cv-01443-BEN-AGS

14            Plaintiff,                 **PLAINTIFF SYNOPSYS, INC.'S EX PARTE MOTION FOR (1) TEMPORARY RESTRAINING ORDER; (2) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; AND (3) ORDER FOR EXPEDITED DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

15       v.

16  AZURENGINE TECHNOLOGY, INC.,
    a Delaware corporation, and DOES 1-
17  10, inclusive,

18            Defendants.

19
                                         Date:
20                                       Time:
                                         Dept:    Court Rm. 5A (5th Flr.)
21                                       Judge:   Hon. Roger T. Benitez

22
                                         ACTION FILED: August 1, 2019
23

24

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

**TO THE CLERK OF THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Synopsys, Inc. ("Synopsys" or "Plaintiff"), hereby moves, pursuant to Local Rules 83.3(g), and Federal Rules of Civil Procedure 26 and 65, and having provided notice to Defendant of this motion, for:

(1) a temporary restraining order enjoining AzurEngine Technology, Inc. ("AzurEngine"), its officers, agents, independent contractors, servants, employees, attorneys, affiliates, directors, assigns and all persons acting in concert with it, from directly or indirectly accessing, copying, disseminating, or making any use of Synopsys software applications without Synopsys' authorization;

(2) an order to show cause why a preliminary injunction should not issue, pursuant to Federal Rule of Civil Procedure 65, enjoining AzurEngine, its officers, agents, independent contractors, servants, employees, attorneys, affiliates, directors, assigns and all persons acting in concert with it, from directly or indirectly committing the above-described acts during the pendency of this action; and

(3) an order allowing limited expedited discovery in the form of forensic imaging and analysis of AzurEngine's electronic devices that are accessing and running without authorization the Synopsys tools at issue, as more specifically defined herein.

Good cause exists for issuance of a temporary restraining order and preliminary injunction in this case because AzurEngine is continuously accessing Synopsys software without authorization in violation of the Digital Millennium Copyright Act ("DMCA"). The requested relief is necessary to stop AzurEngine's ongoing infringement of Synopsys' intellectual property rights, to cease further irreparable injury to Synopsys and to mitigate the harm to Synopsys

Good cause exists for immediate discovery to preserve evidence of existing violations and because additional evidence of AzurEngine's continued unauthorized

1  use of Synopsys software applications exists only in one place – on AzurEngine's

2  electronic devices.  This evidence is at significant risk of being deleted, altered, or

3  overwritten, even inadvertently in the normal course of AzurEngine's business,

4  should discovery not proceed immediately to preserve and analyze this evidence.

5  Counsel for Synopsys informed AzurEngine, via phone and email pursuant to

6  Local Rule 83.3, that Synopsys was filing this Motion for a Temporary Restraining

7  Order, Order to Show Cause re Preliminary Injunction, and Order for Expedited

8  Discovery on AzurEngine via its registered agent, attorney William M. Moore, on

9  August 5, 2019. *See* Declaration of Denise M. Mingrone ("Mingrone Decl.") at ¶¶

10 2-3. Counsel for Synopsys also provided AzurEngine with a copy of this Motion for

11 Temporary Restraining order, Order to Show Cause re Preliminary Injunction,

12 Order for Expedited Discovery, and all supporting documentation for which

13 AzurEngine agreed to accept as service via email.  *Id*. at ¶ 3.

14 This motion for relief is based on this motion and Memorandum of Points

15 and Authorities, the concurrently filed Declarations of Denise M. Mingrone and of

16 Norman F. Kelly, the concurrently lodged [Proposed] Order Granting Plaintiff's *Ex*

17 *Parte* Motion for Temporary Restraining Order; Order to Show Cause re

18 Preliminary Injunction; and Order for Expedited Discovery, all papers on file in this

19 action, and any oral argument of counsel the Court may hear.

20 DATED: August 5, 2019                              Respectfully submitted,

21

22                                          By:_____*/s/ Denise M. Mingrone*_____

23                                               DENISE M. MINGRONE
                                                 Attorneys for Plaintiff
24                                               SYNOPSYS, INC.

25

26

27

28

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY

1
2

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF ARGUMENT ..................................................................... 1

II.     STATEMENT OF FACTS ........................................................................... 3

    A.      Synopsys' Cutting-Edge Software Solutions................................... 3

    B.      AzurEngine's Unauthorized Access of Synopsys Software................ 4

III.    LEGAL STANDARDS .............................................................................. 6

    A.      Expedited Discovery ...................................................................... 6

    B.      Injunctive Relief ............................................................................ 7

IV.     LEGAL ARGUMENT ............................................................................... 7

    A.      Synopsys Is Likely to Succeed on Its Claim Against AzurEngine
        for Violation of the Digital Millennium Copyright Act
        ("DMCA") ...................................................................................... 7

        1.      Synopsys' License Key System Is an Anti-Circumvention
               Technological Measure That Effectively Controls Access
               to Synopsys Software .......................................................... 8

        2.      AzurEngine Circumvented Synopsys' License Key
               System and Gained Unauthorized Access to Synopsys
               Software .............................................................................. 9

        3.      Synopsys Software Is Protected Under the Copyright Act........ 10

    B.      Synopsys Will Suffer Irreparable Harm if an Injunction Is Not
        Issued and the Balance of Equities Tips in Favor of an
        Injunction ...................................................................................... 11

    C.      An Injunction Serves the Public Interest ......................................... 14

    D.      Synopsys Has Complied with the Requirements of Rule 65 of
        the Federal Rules of Civil Procedure and Local Rule 83.3 ............... 15

    E.      Good Cause Exists for Expedited Discovery.................................... 16

V.      CONCLUSION.......................................................................................... 20

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*321 Studios v. Metro Goldwyn Mayer Studios, Inc.*,
   307 F. Supp. 2d 1085 (N.D. Cal. 2004)...............................................................7

*A&M Records v. Napster, Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ...........................................................................12

*Apple Computer, Inc. v. Formula Int'l Inc.*,
   725 F.2d 521 (9th Cir. 1984) ..............................................................................10

*Apple Inc. v. Mobile Star LLC*,
   No. 16-cv-06001-WHO, 2017 WL 4005468 (N.D. Cal. Sept. 12,
   2017) ..............................................................................................................6, 16

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   2011 U.S. Dist. LEXIS 53233 (N.D. Cal. May 18, 2011) ...................2, 6, 16, 17

*Apple, Inc. v. Psystar Corp.*,
   673 F. Supp. 2d 931 (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th
   Cir. 2011)..................................................................................9, 10, 11, 13, 15

*Arista Records LLC v. Ibanez*,
   2008 WL 65397 (S.D. Cal. Jan. 4, 2008) ...........................................................15

*Bernstein v. U.S. Dep't of State*,
   922 F. Supp. 1426 (N.D. Cal. 1996)....................................................................10

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*,
   843 F.2d 600 (1st Cir. 1988) ..............................................................................14

*Dish Network, L.L.C. v. SatFTA*,
   2011 WL 856268 (N.D. Cal. Mar. 9, 2011) ..................................................13, 14

*Dish Network, L.L.C., v. Vicxon Corp.*,
   No. 12-cv-9-L WVG, 2013 WL 3894905, at *1, 6-7 (S.D. Cal. July
   26, 2013) .........................................................................................................9, 10

*Dish Networks L.L.C. v. Whitcomb*,
   No. 11-cv-0333 W RBB, 2011 WL 1559824 (S.D. Cal. Apr. 25,
   2011)....................................................................................................................15

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-ii-

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

*Disney Enters., Inc. v. VidAngel, Inc.*,
    869 F.3d 848 (9th Cir. 2017) ................................................................ 11

*eBay, Inc. v. Bidder's Edge, Inc.*,
    100 F. Supp. 2d 1058 (N.D. Cal. 2000) ............................................... 12

*EchoStar Satellite LLC v. ViewTech, Inc.*,
    No. 07-CV-1273-BEN-WVG, 2011 WL 1522409 (S.D. Cal. Apr.
    20, 2011) (Benitez, J.) ........................................................................... 8

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ............................................................................. 11

*Flextronics Int'l, Ltd. v. Parametric Tech., Corp.*,
    2013 WL 5200175 (N.D. Cal. Sept. 16, 2013) .................................... 14

*Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*,
    886 F.2d 1173 (9th Cir. 1989) ............................................................. 10

*L.A. Unified Sch. Dist. v. United States Dist. Ct.*,
    650 F.2d 1004 (9th Cir. 1981) ............................................................... 7

*Lilith Games (Shanghai) Co. v. UCool, Inc.*,
    2015 WL 5591612 (N.D. Cal. Sept. 23, 2015) .................................... 14

*Mazer v. Stein*,
    347 U.S. 201 (1954) ............................................................................. 12

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010), *as amended on denial of reh'g* (Feb.
    17, 2011), *opinion amended and superseded on denial of reh'g*, No.
    09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) ........... 2, 8, 9, 10

*Nintendo of Am., Inc. v. Bung Enters.*,
    1999 U.S. Dist. LEXIS 23588 (C.D. Cal. Dec. 14, 1999) .................... 8

*Nobelbiz, Inc. v. Wesson*,
    2014 U.S. Dist. LEXIS 54432 (S.D. Cal. April 18, 2014) .................. 18

*Oracle Am., Inc. v. Google, Inc.*
    750 F.3d 1339 (Fed. Cir. 2014) ........................................................... 10

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*,
    793 F.2d 1132 (9th Cir. 1986) ............................................................. 13

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-iii-

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; ORDER FOR EXPEDITED DISCOVERY; AND
PROTECTIVE ORDER

*Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*,
   944 F.2d 597 (9th Cir. 2001) ................................................................. 13

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
   907 F. Supp. 2d 1086 (N.D. Cal. 2012) ........................................... 6, 16

*San Diego Comic Convention v. Dan Farr Productions*,
   336 F.Supp.3d 1191 (S.D. Cal. 2018) ................................................. 13

*Sega Enters. Ltd. v. Accolade, Inc.*,
   977 F.2d 1510 (9th Cir. 1992), *as amended* (Jan. 6, 1993) ................. 10

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002) ....................................... 3, 6, 16, 19

*Sony Computer Entm't Am., Inc. v. Divineo, Inc.*,
   457 F. Supp. 2d 957 (N.D. Cal. 2006) .................................................. 8

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) ................................................................. 7

*Synopsys, Inc. v. Gyrfalcon Tech. Inc.*,
   No. 3:18-CV-06361-JD, Minute Order, ECF No. 28 (Dec. 26,
   2018) .................................................................................................... 16

*Synopsys, Inc. v. Gyrfalcon Technology, Inc.*,
   No. 18-cv-06361-JD, Dkt. No. 10 (N.D. Cal. Oct. 25, 2018) ............... 2

*Synopsys, Inc. v. InnoGrit, Corp*,
   No. 19-cv-02082-LHK, 2019 WL 1779978 (N.D. Cal. Apr. 23,
   2019) ................................................................................................. 1, 16

*Synopsys, Inc. v. InnoGrit, Corp.*,
   No. 19-CV-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26,
   2019) ...........................................................................2, 7, 9, 12, 13

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
   No. 17-cv-00561-WHO, 2017 U.S. Dist. LEXIS 130070 (N.D. Cal.
   Aug. 15, 2017) ................................................................................... 1, 9

*Washington v. Lumber Liquidators, Inc.*,
   No. 15-CV-01475-JST, 2015 WL 2089992 (N.D. Cal. May 5,
   2015) ................................................................................................. 6, 16

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

-iv-

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; ORDER FOR EXPEDITED DISCOVERY; AND
PROTECTIVE ORDER

*Winter v. Nat. Res. Def. Council*,
    555 U.S. 7 (2008) ............................................................... 7, 11

*WPIX, Inc. v. ivi, Inc.*,
    691 F.3d 275, 285–86 (2d Cir. 2012) ................................. 11

**Statutes**

17 U.S.C. § 410(c) ...................................................................... 10

17 U.S.C. § 1201(a)(3)(A) ........................................................... 10

17 U.S.C. § 1203(b)(1) ................................................................. 7

Copyright Act. 17 U.S.C. § 101 ................................................. 10

Copyright Act. 17 U.S.C. § 1201(a)(1)(A) .................................. 8

Digital Millennium Copyright Act ........................................ 1, 7

**Other Authorities**

Fed. R. Civ. P. 26(d) ............................................................. 6, 16

Fed. R. Civ. P. 65(b) ............................................................. 7, 15

Local Rule 83.3(g) ...................................................................... 15

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

–v–

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; ORDER FOR EXPEDITED DISCOVERY; AND
PROTECTIVE ORDER

# I.    <u>SUMMARY OF ARGUMENT</u>

Defendant AzurEngine Technology, Inc. ("AzurEngine") is unlawfully pirating massive amounts of Synopsys' software.  AzurEngine does so recognizing the need to obtain a license – indeed, while AzurEngine entered into an evaluation license with Synopsys to evaluate some of Synopsys' semiconductor IP products, it never entered into any form of agreement to use Synopsys' EDA tools, the very tools at issue here.  Instead of obtaining a license, AzurEngine elected to pirate Synopsys software thousands of times in order to speedily develop a chip and obtain additional funding from a Chinese venture capital fund.  AzurEngine's illegal activity needs to stop.  Synopsys seeks the Court's assistance to halt AzurEngine's unauthorized access and use of Synopsys' valuable copyrighted works and to permit expedited discovery to preserve and analyze forensic evidence regarding AzurEngine's conduct that may otherwise be lost.

On August 1, 2019, Synopsys filed a complaint against AzurEngine alleging violations of the Digital Millennium Copyright Act ("DMCA").  Dkt. 1.  The copyrighted software at issue is the product of hundreds of millions of dollars and years of Synopsys' time and investment dedicated to developing its ground-breaking Electronic Design Automation ("EDA") tools.  Synopsys software is protected by copyright and strict technological licensing controls implemented through Synopsys' proprietary license key system technology.  This is a built-in security system that prevents Synopsys software from running without required license keys.  The license check-out technology effectively controls access within the meaning of the DMCA.  *See Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 U.S. Dist. LEXIS 130070, at *23-24 (N.D. Cal. Aug. 15, 2017) (approving DMCA claims predicated on Synopsys' SCL system); *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26, 2019).

Despite Synopsys' significant efforts to protect its software, piracy is a

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY

1  significant problem.  Technologically savvy actors such as AzurEngine have

2  discovered ways to circumvent Synopsys' license key system, such as by using

3  counterfeit license keys to trick Synopsys' security measures into thinking

4  AzurEngine is an authorized customer.  This conduct violates the DMCA.  *Id.*;

5  *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952 (9th Cir. 2010), *as*

6  *amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on*

7  *denial of reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (the

8  DMCA prevents unauthorized circumvention of an access control measure).

9  AzurEngine is not a Synopsys customer and has therefore chosen to engage in

10  criminal conduct to obtain the world's leading EDA software.

11      AzurEngine has pirated Synopsys software over 15,000 times.  It has *at least*

12  8 different employees gaining unauthorized access to millions of dollars' worth of

13  Synopsys' industry-leading software, including Design Compiler and VCS.

14  Synopsys prices its tools based, in part, on its significant investments in research

15  and development and the goodwill it has built within the industry.  However,

16  AzurEngine's conduct threatens Synopsys' standing as a leading developer of EDA

17  software.  Indeed, software piracy injures Synopsys' goodwill, reputation, and

18  deflates the market price for Synopsys tools, causing irreparable and incalculable

19  harm to Synopsys.  Synopsys therefore seeks a temporary restraining order and an

20  order for limited expedited forensic discovery to ensure that material evidence is

21  not permanently lost, altered or destroyed.  *Synopsys, Inc. v. InnoGrit, Corp*, No.

22  19-cv-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26, 2019) (enjoining

23  defendant from continuing to pirate Synopsys' software in violation of the DMCA

24  based, in part, on expedited forensic discovery into the infringing devices);

25  *Synopsys, Inc. v. Gyrfalcon Technology, Inc.*, No. 18-cv-06361-JD, Dkt. No. 10

26  (N.D. Cal. Oct. 25, 2018) (stipulation for entry of preliminary injunction and

27  expedited discovery in case alleging violations of DMCA): *Apple Inc. v. Samsung*

28  *Elecs. Co., Ltd.*, 2011 U.S. Dist. LEXIS 53233, at *4 (N.D. Cal. May 18, 2011);

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

*Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

AzurEngine's illicit activities must be stopped immediately to prevent further irreparable injury to Synopsys.  Due to the magnitude and character of AzurEngine's willful unauthorized use of Synopsys' software, Synopsys seeks expedited relief in the form of a temporary restraining order.  Concurrently, Synopsys seeks (1) an Order to Show Cause re Preliminary Injunction and (2) an Order for Leave to Conduct Expedited Discovery to stop the ongoing illicit access and use of Synopsys' copyrighted software by AzurEngine.

## II.    STATEMENT OF FACTS

### A.    Synopsys' Cutting-Edge Software Solutions

Synopsys provides industry-leading and cutting-edge EDA solutions for the semiconductor industry.  EDA generally refers to using computers to design, verify, and simulate the performance of electronic circuits.  Semiconductor manufacturers and electronics companies use EDA software to design, test, and manufacture microchips for a wide range of products.  Synopsys has developed a comprehensive, integrated portfolio of intellectual property covering semiconductor prototyping, implementation, verification, manufacturing, optical, field-programmable gate array, and software quality and security solutions. Headquartered in Mountain View, California, Synopsys is the fifteenth largest software company in the world and currently employs over 13,000 employees worldwide.  For more than 30 years, engineers around the world have used Synopsys technology to design and create integrated circuits and systems.

The copyrighted software applications encompass ground-breaking tools in chip design automation and are the result of hundreds of millions of dollars of investment as well as years of Synopsys' time.  Specific applications pirated by AzurEngine include at least Synopsys' Design Compiler, PrimeTime, VCS, Formality, IC Compiler, StarRC, and Library Compiler (collectively known as "Synopsys Tools").  This EDA software enables chip manufacturers to virtually

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

design and test new chip designs in faster, more efficient environments.  These works are all protected under Title 17 of the United States Code, providing copyright protection.

Synopsys does not sell ownership, copyright or other intellectual property rights to its proprietary EDA software nor to its associated services.  Instead, Synopsys permits access to its valuable EDA software only through the purchase of customized licenses that grant authorized customers limited rights to use Synopsys' intellectual property.  These licenses range in price depending on type of software the customer intends to license, the number of software tools and the number of licenses authorized to be used at any given time.  These licenses grant Synopsys customers limited rights to install Synopsys EDA software and to access and use specific Synopsys EDA software only pursuant to the specifically licensed rights.  *See* Kelly Decl. at ¶¶ 3-4.  Synopsys software is licensed only via strict controls which monitor and limit access and use to each licensee's terms.  All Synopsys software programs are subject to access control by Synopsys' license key system.

Synopsys controls and restricts access to its EDA software by using a license key system.  Synopsys' license key system uses a built-in encrypted control code security system that requires a user to access a key code that can only be provided by Synopsys when an authorized user executes its licensed software.  This license key system monitors the quantity and term of the software in accordance with the license terms.  *Id.* at ¶¶ 4-5.  Synopsys only provides a valid license key to authorized users.

**B.**    **AzurEngine's Unauthorized Access of Synopsys Software**

Digital crimes are a constantly evolving threat to software developers.  Cybercriminals constantly develop new nefarious methods to illegally access Synopsys' software, such as obtaining counterfeit license keys that trick Synopsys' license key system into thinking the devices are operating with an authorized

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

license key to use the software.  While Synopsys makes every effort to prevent these illegal activities, it cannot prevent all cybercriminals without court intervention.

AzurEngine is a relatively new company started in 2016.  AzurEngine's mission is to develop a "state-of-art reconfigurable processor for next generation deep learning technologies."  Started in San Diego, AzurEngine is aggressively developing its chip with the aid of Synopsys' software.  Indeed, within one year of its founding, AzurEngine developed its first prototype chip.  Months later, AzurEngine secured funding from Xianghe Capital, a Chinese venture capital fund. Synopsys is informed and believes that AzurEngine is using counterfeit license keys in San Diego to illegally circumvent Synopsys' access control license key protections to aggressively develop its chip.  *Id*. at ¶¶ 6-7.  In other words, presumably to obtain additional funding by aggressively developing its chip, AzurEngine is gaining unauthorized access to Synopsys Tools in violation of Synopsys' rights and using Synopsys' tools and believes it can do so with impunity. AzurEngine is not and has never been a Synopsys customer. Synopsys at no time provided AzurEngine with valid license keys for any of the software at issue.  *Id*. at ¶ 6.

Synopsys EDA and license server software are designed to operate only after determining that the user has a valid license key file that authorizes the execution of the EDA tool and that the user is executing the tool with licenses from an authorized license server.  *Id*. at ¶ 4.  Synopsys monitors use of its EDA tools using software including SmartFlow security software (the "SmartFlow Software") embedded within the Synopsys software.  *Id*. at ¶ 5. The SmartFlow Software sends information to Synopsys whenever it detects an unauthorized use of Synopsys tools.  Synopsys refers to the information it receives as "call-home" data. *Id*.  The call-home data has confirmed over 15,000 total instances of unauthorized access and use by AzurEngine, including as recently as the date of this filing,

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

1  August 5, 2019.  *Id*. at ¶¶ 8-9.

2  **III.    LEGAL STANDARDS**

3      **A.    Expedited Discovery**

4          Federal Rule of Civil Procedure 26(d) contemplates that court-ordered

5  discovery prior to a Rule 26(f) conference is "appropriate" in urgent cases.  Fed. R.

6  Civ. P. 26 advisory committee's notes; Fed. R. Civ. P. 26(d).  "In the Ninth Circuit,

7  courts use the 'good cause' standard to determine whether discovery should be

8  allowed to proceed prior to a Rule 26(f) conference."  *Rovio Entm't Ltd. v. Royal*

9  *Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1099 (N.D. Cal. 2012).  "Good cause may

10  be found where the need for expedited discovery, in consideration of the

11  administration of justice, outweighs the prejudice to the responding party."

12  *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

13          "In determining whether good cause justifies expedited discovery, courts

14  commonly consider factors including: '(1) whether a preliminary injunction is

15  pending; (2) the breadth of the discovery requests; (3) the purpose for requesting

16  the expedited discovery; (4) the burden on the [party opposing expedited discovery]

17  to comply with the requests; and (5) how far in advance of the typical discovery

18  process the request was made.'"  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No.: 11-

19  CV-01846-LHK, 2011 U.S. Dist. LEXIS 53233, at *4 (N.D. Cal. May 18, 2011)

20  (citation omitted) (awarding expedited discovery); *see also Washington v. Lumber*

21  *Liquidators, Inc.*, No. 15-CV-01475-JST, 2015 WL 2089992, at *2 (N.D. Cal. May

22  5, 2015) ("the Court notes that the pendency of Plaintiffs' motion for a preliminary

23  injunction supports their request for expedited discovery"); *Apple Inc. v. Mobile*

24  *Star LLC*, No. 16-cv-06001-WHO, 2017 WL 4005468, at *4 (N.D. Cal. Sept. 12,

25  2017) (allowing a second Rule 30(b)(6) deposition after granting expedited

26  discovery: "my purpose in allowing expedited discovery was so that Apple could

27  secure enough discovery to support its motion for a Preliminary Injunction, not to

28  be ready for trial").

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

### B.   Injunctive Relief

To obtain an *ex parte* temporary restraining order, a plaintiff must meet both the general standard for temporary restraining orders and the requirements for *ex parte* orders set forth in Federal Rule of Civil Procedure 65(b).  The standard for obtaining a temporary restraining order is identical to the standard for obtaining a preliminary injunction, but a TRO's requirements are less rigid since a TRO's duration is much shorter than a preliminary injunction.  *L.A. Unified Sch. Dist. v. United States Dist. Ct.*, 650 F.2d 1004, 1008 (9th Cir. 1981).  A district court has broad discretion to issue a TRO.  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.9 (9th Cir. 2001).

In both instances, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent a preliminary injunction; (3) that the balance of equities tips in favor of issuing an injunction; and (4) that an injunction is in the public's interest.  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  Moreover, the DMCA specifically authorizes the granting of "temporary and permanent injunctions" to restrain violations of the DMCA, including circumvention of technological protection measures.  17 U.S.C. § 1203(b)(1); *Synopsys, Inc. v. InnoGrit, Corp*, No. 19-cv-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26, 2019) (enjoining defendant from continuing to pirate Synopsys' software in violation of the DMCA); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F. Supp. 2d 1085, 1105 (N.D. Cal. 2004) ("the court may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation" under the DMCA).

## IV.   LEGAL ARGUMENT

### A.   Synopsys Is Likely to Succeed on Its Claim Against AzurEngine for Violation of the Digital Millennium Copyright Act ("DMCA")

To prevail on its claim for relief under the DMCA, Synopsys must prove that (1) its software included a technological measure that effectively controls access to

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

the software, (2) AzurEngine circumvented that technological measure, and (3) the

Synopsys software that AzurEngine accessed without authorization is a work

protected under the Copyright Act.  17 U.S.C. § 1201(a)(1)(A); *see also MDY*

*Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 952 (9th Cir. 2010), *as amended*

*on denial of reh'g* (Feb. 17, 2011) , *opinion amended and superseded on denial of*

*reh'g*, No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (§ 1201(a)(1)(A)

"created a distinct anti-circumvention right . . . without an infringement nexus

requirement").

1.   **Synopsys' License Key System Is an Anti-Circumvention Technological Measure That Effectively Controls Access to Synopsys Software**

As discussed herein, Synopsys EDA tools contain technology that controls

access to the software by permitting only authorized customers with valid license

keys.  The license check-out technology effectively controls access within the

meaning of the DMCA.  *See, e.g., MDY Indus.*, 629 F.3d at 954 n.17 ("'effectively

control access to a work' . . .requires an access control measure to provide some

degree of control over access to a copyrighted work"); *Nintendo of Am., Inc. v.*

*Bung Enters.*, 1999 U.S. Dist. LEXIS 23588, at *33 (C.D. Cal. Dec. 14, 1999)

("'key' which unlocks the hardware systems, thereby preventing the play of any

game that does not contain the 'key . . .meet[s] the definition of technological

measures"); *Sony Computer Entm't Am., Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957,

958–59, 965–66 (N.D. Cal. 2006) (similar).

Because the EDA software will not run without checking out a license key

and the license server software verifies that it is authorized to operate with the

specified license key file, this license check-out technology "effectively controls

access" to Synopsys' copyrighted work within the meaning of the DMCA.  *See*

*EchoStar Satellite LLC v. ViewTech, Inc*., No. 07-CV-1273-BEN-WVG, 2011 WL

1522409, at *2 (S.D. Cal. Apr. 20, 2011) (Benitez, J.) (finding that Plaintiff's

complex measures including encryption and providing only lawful users with tools

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

to access the copyrighted programming demonstrated an access control measure under the DMCA); *Synopsys, Inc. v. InnoGrit, Corp*, No. 19-cv-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26, 2019) (enjoining Defendant under the DMCA from circumventing Synopsys' SCL license key system); *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO, 2017 U.S. Dist. LEXIS 130070, at *23-24 (N.D. Cal. Aug. 15, 2017) (approving DMCA claims predicated on Synopsys' SCL license key system); *Dish Network, L.L.C., v. Vicxon Corp.*, No. 12-cv-9-L WVG, 2013 WL 3894905, at *1 (S.D. Cal. July 26, 2013) (finding that Plaintiff's use of an encryption system to restrict access to their signals such that only authorized subscribers can decrypt the signals was an access control measure under the DMCA); *Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 931, 934, 942 (N.D. Cal. 2009), *aff'd,* 658 F.3d 1150 (9th Cir. 2011) (discussing "lock-and-key technological measures" as control measures under the DMCA); *MDY Indus.,* 629 F.3d at 954 n.17 (the DMCA prevents unauthorized circumvention of an access control measure).

### 2.   AzurEngine Circumvented Synopsys' License Key System and Gained Unauthorized Access to Synopsys Software

AzurEngine does not have a license, nor is it otherwise authorized, to use Synopsys EDA tools.  The call-home data received by Synopsys nonetheless shows that AzurEngine has been accessing and using Synopsys EDA tools thousands and thousands of times and continues to do so as of the filing of this motion.  Indeed, the data shows that AzurEngine has accessed and used Synopsys EDA software by circumventing the access controls described above.  Synopsys is informed and believes that AzurEngine has been able to access and use Synopsys EDA software without authorization by using counterfeit license keys.  By using counterfeit keys, AzurEngine is able to trick Synopsys' license key servers into thinking AzurEngine is a valid customer.  Therefore, by using counterfeit keys, AzurEngine is taking affirmative steps to "avoid," "bypass," and "impair" Synopsys' license key

checking access control software.  17 U.S.C. § 1201(a)(3)(A) (defining "circumvent a technological measure"); *see MDY Indus.*, 629 F.3d at 954 (holding that defendants unauthorized circumvention of the control measures meets the 'circumvention' element under the DMCA); *see also Apple, Inc*., 673 F. Supp. 2d at 942 (finding violation of the DMCA where defendant circumvented encrypted key technology measures to gain access to Apple's copyrighted works) *Dish Network, L.L.C., v. Vicxon Corp.*, No. 12-cv-9-L WVG, 2013 WL 3894905, at *6-7 (S.D. Cal. July 26, 2013) (finding violation of the DMCA where defendant circumvented "plaintiff's use of complex security measures to prevent unauthorized access to copyrighted material").

### 3.    Synopsys Software Is Protected Under the Copyright Act

Lastly, Synopsys owns the copyrights to its EDA software, including the tools at issue in this case: Design Compiler, PrimeTime, VCS, Formality, IC Compiler, StarRC, and Library Compiler software.  Certain of Synopsys EDA software is part of Plaintiff's registered copyrighted source code, which is *prima facie* evidence of Plaintiff's lawful ownership of this code.  17 U.S.C. § 410(c). The Court may rely on this registration to establish ownership and originality. *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).  Moreover, all of Synopsys software comprises creative, original works of authorship that are protected under the Copyright Act. 17 U.S.C. § 101; *Apple Computer, Inc. v. Formula Int'l Inc.*, 725 F.2d 521, 525 (9th Cir. 1984) (holding that computer programs can be afforded protection under the Copyright Act); *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1519 (9th Cir. 1992), *as amended* (Jan. 6, 1993) (the "Copyright Act unambiguously extended copyright protection to computer programs"); *Oracle Am., Inc. v. Google, Inc.* 750 F.3d 1339 (Fed. Cir. 2014) (applying Ninth Circuit law) (holding that Oracle's Java API software is copyrightable because it is creative and original); *Bernstein v. U.S. Dep't of State*, 922 F. Supp. 1426, 1436 (N.D. Cal. 1996) ("Computer software is subject to

copyright protection as a 'literary work.'").  Consequently, Synopsys will establish both ownership and originality through independent authorship of the copied code. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 345 (1991) ("the requisite level of creativity [necessary to satisfy the 'originality' requirement for copyrightability] is extremely low"; "[t]he vast majority of works make the grade quite easily").

## B.    Synopsys Will Suffer Irreparable Harm if an Injunction Is Not Issued and the Balance of Equities Tips in Favor of an Injunction

A preliminary injunction may issue only upon a showing that "irreparable injury is *likely* in the absence of an injunction."  *Winter*, 555 U.S. at 22.  Courts routinely hold that a party is likely irreparably harmed where the evidence supports a finding of a DMCA violation.  *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848 (9th Cir. 2017) (affirming district court's holding that plaintiff established irreparable harm with evidence of copyright infringement and DMCA violations); *Apple Inc.*, 673 F. Supp. 2d at 948 (irreparable harm in a copyright infringement action may be established through reputational harm); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285–86 (2d Cir. 2012) (holding that "streaming copyrighted works without permission," including at times "earlier ... than scheduled by the programs' copyright holders or paying" licensees was likely to cause irreparable harm to copyright owners' "negotiating platform and business model").  AzurEngine's extensive and ongoing piracy irreparably harms Synopsys by repeatedly accessing and using Synopsys' intellectual property without a license, undermining the value of Synopsys' copyrighted works and its ability to effectively negotiate with customers who intend to use its software.  Synopsys also suffers the loss of customer goodwill and confidence when its software is accessed without authorization.

The diminution in value to Synopsys' copyrights in its EDA software will continue should AzurEngine's unlawful access to and use of Synopsys software be

allowed to continue unabated.  Pirates such as AzurEngine should not be permitted to circumvent Synopsys' security measures and gain unlicensed access to intellectual property that Synopsys has invested hundreds of millions of dollars in researching and developing.  AzurEngine's conduct "creates a downward pricing pressure to induce customers to *pay* for a license rather than paying nothing to use pirated software off the street."  *See Synopsys, Inc. v. InnoGrit, Corp*, No. 19-cv-02082, 2019 WL 2617091, at \*3-4; *see also A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) ("Having digital downloads available for free on the Napster system necessarily harms the copyright holders' attempts to charge for the same downloads.").

Further, AzurEngine's piracy contributes to lost profits and a demise in Synopsys' market share every year.  *Synopsys, Inc. v. InnoGrit, Corp*, No. 19-cv-02082, 2019 WL 2617091, at \*3-4. (finding Synopsys will be irreparably harmed by Defendant's conduct because "software piracy 'decreases [Synopsys'] market share by … about $500 million in revenue *every year*.'"); *see also eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1066 (N.D. Cal. 2000) (holding that lost profits are "irreparable because it is neither easily calculable, nor easily compensable, and is therefore an appropriate basis for injunctive relief").

Were pirates allowed to steal Synopsys' software with impunity, companies like Synopsys would be discouraged from developing and licensing some of the world's most important and vital software.  *Mazer v. Stein*, 347 U.S. 201, 219 (1954) ("the best way to advance public welfare" is to "encourage[]" authors to engage in exactly the sort of "individual effort" Synopsys undertook, by rewarding their efforts with "personal gain").  If Synopsys is unable to attain Court assistance to prevent the continued circumvention of its technology, its business goodwill will be eroded, it may lose its reputation as an EDA leader in the industry and the damages flowing therefrom will be impossible to measure.  Accordingly, Synopsys will suffer irreparable harm if an injunction is not issued.  *See Synopsys, Inc. v.*

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

1   *InnoGrit, Corp*, No. 19-cv-02082-LHK, 2019 WL 2617091 (N.D. Cal. June 26,

2   2019) (holding that Synopsys' "diminution in market share and lost profits

3   constitutes irreparable harm"); *Rent-A-Ctr., Inc. v. Canyon Television & Appliance*

4   *Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 2001) (holding that "intangible injuries,

5   such as damage to … goodwill, qualify as irreparable harm"); *Apple*, *Inc.*, 673 F.

6   Supp. 2d at 948 (irreparable harm in a copyright infringement action may be

7   established through reputational harm).

8          In contrast, if a temporary restraining order is issued, AzurEngine will

9   merely have to cease its illegal activity.  *San Diego Comic Convention v. Dan Farr*

10   *Productions*, 336 F.Supp.3d 1191, 1198 (S.D. Cal. 2018) ("balance of hardship tips

11   in plaintiff's favor as there will be no harm to defendant as an injunction would

12   merely require defendant to comply with the law"); *Dish Network, L.L.C. v.*

13   *SatFTA*, 2011 WL 856268, at *8 (N.D. Cal. Mar. 9, 2011) ("an injunction would do

14   no more than require Defendant to comply with federal … anti-piracy laws").  It

15   will not suffer any monetary or other damage since any benefits it receives from

16   accessing and using Synopsys software without a license are ill-gotten gains to

17   which AzurEngine has no entitlement.  *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*,

18   793 F.2d 1132, 1135-36 (9th Cir. 1986) ("If the defendants sincerely intend not to

19   infringe, then the injunction harms them little; if they do, it gives [plaintiff]

20   substantial protections of its [intellectual property].").   AzurEngine continues to

21   use Synopsys software and unless an injunction is put into place to stop

22   AzurEngine's illegal use, it is likely that AzurEngine will continue its unlawful use

23   of Synopsys software.  The balance of equities plainly tips in favor of an injunction.

24          In addition to restraining AzurEngine from engaging in additional illegal

25   conduct, the evidence of AzurEngine's illicit use must be preserved as quickly as

26   possible to prevent its alteration or destruction.  An award of damages is

27   insufficient relief at this stage, as continued unauthorized access and use of its

28   software—and the loss of evidence thereof—devalues Synopsys' intellectual

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

property and irreparable harm may continue through further improper dissemination of Synopsys' software to other unauthorized users.  The harm to Synopsys cannot be overstated.  AzurEngine is accessing and using Synopsys software thousands of times, each time in violation of the DMCA.  AzurEngine's unlawful conduct must be enjoined.  Unless courts enter injunctions in circumstances such as this, defendants like AzurEngine will elect to steal rather than obtain legitimate licenses for Synopsys' coveted software.  Because of the irreparable harm to Synopsys, and the overwhelming weight of the equities in its favor, a restraining order should issue.

### C.    An Injunction Serves the Public Interest

The public interest strongly favors granting Synopsys the requested relief. *Dish Network, L.L.C.*, 2011 WL 856268, at *8 (stating an injunction in a DMCA case merely requires defendants to comply with federal anti-piracy laws and "the public has an interest in the enforcement of ... statutes").  In cases relating to copyright or the DMCA, it is ordinarily presumed that an injunction will serve the public interest if the copyright holder shows a likelihood of success on the merits. *Lilith Games (Shanghai) Co. v. UCool, Inc.*, 2015 WL 5591612, at *13 (N.D. Cal. Sept. 23, 2015) (observing that when "evidence of infringement is strong, then the public interest favors its abatement given that the public has an interest in seeing the copyright laws enforced"); *see also Flextronics Int'l, Ltd. v. Parametric Tech., Corp.*, 2013 WL 5200175, at *8 (N.D. Cal. Sept. 16, 2013) (recognizing a public policy interest in preventing copyright infringement); *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 612 (1st Cir. 1988) (finding it "virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work") (citation omitted).

The public interest will be strongly served by preliminarily enjoining

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-cv-01443-BEN-AGS

AzurEngine's violations of the DMCA.  *Dish Networks L.L.C. v. Whitcomb*, No. 11-cv-0333 W RBB, 2011 WL 1559824, at *4 (S.D. Cal. Apr. 25, 2011) ("the public has a strong interest in enforcing anti-piracy legislation, such as the DMCA"); *Arista Records LLC v. Ibanez*, 2008 WL 65397, at *2 (S.D. Cal. Jan. 4, 2008) (holding that entry of injunction is consistent with the goals to protect the public's interest in upholding copyright protections).  Allowing ongoing circumvention of Synopsys software at the expense of increasing and expanding irreparable harm to Synopsys will only reward piracy at the expense of copyright owners.  This will harm the public as true innovators will be deterred from investing the effort and resources needed to create new products and technologies if others are allowed to siphon away with impunity these new products and technologies.  *See Apple Inc.*, 673 F. Supp. 2d at 950 (finding an injunction preventing defendant from continuing to commit illegal acts under DMCA "would ensure that the public will continue to benefit from the creative fruits of [plaintiff's] labor").  Certainly, public policy favors a swift end to software piracy and DMCA violations as they are detected.  Issuance of a restraining order here serves the public interest.

### D.   Synopsys Has Complied with the Requirements of Rule 65 of the Federal Rules of Civil Procedure and Local Rule 83.3

Synopsys has fully complied with Rule 65 of the Federal Rules of Civil Procedure and Local Rule 83.3(g) for issuance of an *ex parte* TRO and an Order to Show Cause why a preliminary injunction should not issue.  Synopsys has submitted declarations and other evidence showing that it will be irreparably harmed without an order granting its motion and restraining AzurEngine from continuing further violations of the DMCA.  *See generally* Kelly Decl.

Synopsys has also fully complied with the notice requirements of Local Rule 83.3(g).  Counsel for Synopsys informed AzurEngine of Synopsys' *ex parte* Motion for a Temporary Restraining Order, Order to Show Cause regarding Preliminary

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

1    Injunction, and Order for Expedited Discovery, as well as the complaint in this

2    action, and provided copies of all to AzurEngine's agent on August 5, 2019.  *See*

3    Mingrone Decl.

4        **E.**    **Good Cause Exists for Expedited Discovery**

5        The Federal Rules of Civil Procedure provide broad discretion to permit

6    expedited discovery.  Federal Rule of Civil Procedure 26(d) provides that court-

7    ordered discovery prior to a conference between the parties is "appropriate," such

8    as where urgency creates good cause.  Fed. R. Civ. P. 26 advisory committee's

9    notes; *Rovio Entm't Ltd.*, 907 F. Supp. 2d at 1099.  "Good cause may be found

10   where the need for expedited discovery, in consideration of the administration of

11   justice, outweighs the prejudice to the responding party."  *Semitool, Inc.*, 208

12   F.R.D. at 276.

13       "In determining whether good cause justifies expedited discovery, courts

14   commonly consider factors including: '(1) whether a preliminary injunction is

15   pending; (2) the breadth of the discovery requests; (3) the purpose for requesting

16   the expedited discovery; (4) the burden on the [party opposing expedited discovery]

17   to comply with the requests; and (5) how far in advance of the typical discovery

18   process the request was made.'"  *Apple Inc.*, 2011 U.S. Dist. LEXIS 53233, at *4

19   (awarding expedited discovery); *see also Synopsys, Inc. v. InnoGrit, Corp*, No. 19-

20   cv-02082-LHK, 2019 WL 1779978 (N.D. Cal. Apr. 23, 2019) (permitting expedited

21   discovery); *Washington*, 2015 WL 2089992, at *2 ("the Court notes that the

22   pendency of Plaintiffs' motion for a preliminary injunction supports their request

23   for expedited discovery"); *Apple Inc.*, 2017 WL 4005468, at *4 (noting that the

24   court had previously permitted expedited discovery to support a motion for

25   Preliminary Injunction); *Synopsys, Inc. v. Gyrfalcon Tech. Inc.*, No. 3:18-CV-

26   06361-JD, Minute Order, ECF No. 28 (Dec. 26, 2018) & Hr'g Tr. 9:12, 10:12-13,

27   ECF No. 31 (Jan. 14, 2018) (Donato, J.) (granting expedited discovery for imaging

28   of devices and stating on the record at the hearing on the motion for expedited

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

discovery that "this should be very straightforward" "[i]t's going to be done…this is basic, you know, software discovery").

Good cause exists in this case for the Court to allow for limited expedited forensic discovery of AzurEngine's electronic devices because Synopsys meets all of the factors noted above.  First, Synopsys seeks entry of a preliminary injunction.  The requested discovery is expected to provide additional support for entry of that injunction.  Second, the breadth of discovery is extremely limited: Synopsys seeks to image and analyze only the devices on which AzurEngine is accessing and running Synopsys EDA software.  Third, these offending electronic devices can be easily imaged by a forensic expert to preserve all evidence thereon.  As described above, Synopsys has evidence that AzurEngine is accessing and using Synopsys software by using counterfeit license keys.  AzurEngine's conduct, which at least eight employees are engaged in, tricks and circumvents Synopsys' access control system to allow them to run Synopsys software.  Fourth, without the requested discovery, Synopsys is unable to stop the use nor determine the full extent of such unauthorized use, including whether AzurEngine's misconduct is on an even larger scale than already known.  The expedited discovery requested herein would provide Synopsys with the information it requires to identify the scope and extent of AzurEngine's unauthorized use of Synopsys EDA software so Synopsys can protect itself and its intellectual property.  Most importantly, the requested expedited discovery will enable critical evidence to be preserved and reveal whether AzurEngine has disseminated Synopsys' proprietary software to other unauthorized users.

Pursuant to *Apple Inc.*, courts consider the breadth of the expedited discovery request, as well as the burden on the defendant if they are required to respond to that request.  *Apple Inc.*, 2011 U.S. Dist. LEXIS 53233, at *3.  Both of these factors weigh in favor of granting Synopsys leave to conduct expedited discovery.  The discovery Synopsys requests is exceedingly narrow in scope: Synopsys seeks solely

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

to forensically image and analyze only AzurEngine's electronic devices involved in the piracy for the purposes of preserving infringement evidence and determining the extent of the unauthorized use. This information is resident ***only*** on AzurEngine's computers and gathering it is easily accomplished by a forensic expert who can image the devices. The electronic evidence is information that is relevant and which AzurEngine will be required to produce in the normal course of discovery. Yet delay in discovery could cause this evidence to be altered or destroyed, even inadvertently. Additionally, without such immediate discovery, Synopsys has no way to determine whether AzurEngine is further accessing and/or disseminating Synopsys copyrighted software.

In *Nobelbiz, Inc. v. Wesson*, 2014 U.S. Dist. LEXIS 54432, at *4 (S.D. Cal. April 18, 2014), the court granted plaintiff leave to conduct the requested expedited discovery, finding (1) that the requested discovery was directly relevant to plaintiff's claim; (2) that expedited discovery "would allow the Court to address any request for preliminary injunctive relief at the outset of the case, thereby providing a measure of clarity to the parties early in the proceeding and facilitating effective case management;" (3) that the discovery requests were "appropriately restrained in breadth and scope;" and (4) that compliance by the defendant would not be unduly burdensome. Synopsys' expedited discovery request meets all of these factors by (1) only requesting limited evidence directly related to Synopsys' claims (2) that will be relevant to the Court's granting of the preliminary injunction Synopsys seeks in this litigation, and by (3) requesting very targeted and limited information that (4) will not place any burden on AzurEngine to provide.

Most importantly, Synopsys' purpose in requesting the expedited discovery – another factor courts consider – is to ensure that electronic evidence that is material to this litigation is not altered, deleted, destroyed or otherwise lost in the ordinary course of AzurEngine's business. The information Synopsys seeks resides exclusively on AzurEngine's computers and because it exists in electronic form is

ORRICK, HERRINGTON &
SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS

information that is highly vulnerable to transfer, loss or deletion.  *See* Kelly Decl. at ¶¶ 12-13.  The best way to ensure against possible loss is to examine and preserve the electronic evidence as soon as possible.  An order granting leave to conduct expedited discovery is the best way to ensure that no evidence is lost or otherwise tampered with during the course of this litigation.  *Id.*

Finally, the proposed discovery will not prejudice AzurEngine.  *Semitool*, *supra*, 208 F.R.D. at 276 ("Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party.").  AzurEngine will not be burdened by this straightforward request to image its electronic devices as this can be accomplished within normal business hours.  This discovery is material to Synopsys' claims and is information AzurEngine will otherwise be required to provide in the normal course of discovery.  However, should the information sought be deleted, altered or otherwise overwritten in the ordinary course of business, the prejudice to Synopsys via the loss of its ability to prove its claims will outweigh any prejudice to defendant AzurEngine caused by providing immediate access to its electronic devices being used to carry out the piracy against Synopsys.

The specific discovery Synopsys seeks are the electronic devices used by AzurEngine to directly or indirectly access any Synopsys software or products and in AzurEngine's possession, custody, and control. The known devices are the computers/servers with any of the following hostnames and/or MAC addresses and/or Usernames:

| Hostname | MAC addresses |
| --- | --- |
| eda1.azurengine.localdomain | 4C:ED:FB:60:13:55; 30:B4:9E:C7:71:0D; |
| eda2.azurengine.localdomain | 4C:ED:FB:BB:D8:20 |
| eda3.azurengine.localdomain | 30:B4:9E:E9:3C:3F; 04:92:26:C1:9E:AB |

Orrick, Herrington &
Sutcliffe LLP
Attorneys at Law
Silicon Valley

19

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE
PI; AND ORDER FOR EXPEDITED DISCOVERY
Case No. 3:19-CV-01443-BEN-AGS

| eda4.azurengine.localdomain | 30:B4:9E:E9:34:1C; 04:92:26:C1:A0:8D |
| eda5.azurengine.localdomain | 20:04:0F:F3:D5:D0; 20:04:0F:F3:D5:D1; 20:04:0F:F3:D5:D2; 20:04:0F:F3:D5:D3 |

| **Usernames** |
| --- |
| mark |
| zhicc |
| rbraidwood |
| Zhuxiaohu |
| saijinqian |
| jzhu |
| nlai |
| wangguobing |

*See* Kelly Decl. at ¶ 10.

## V.    **CONCLUSION**

Synopsys respectfully requests that the Court: (1) issue a temporary restraining order to stop AzurEngine from accessing/using Synopsys software in the US; (2) permit expedited forensic discovery; and (3) issue an order to show cause as to why AzurEngine should not be enjoined throughout and pending the outcome of this litigation.

DATED: August 5, 2019

ORRICK, HERRINGTON & SUTCLIFFE LLP

By:_____*/s/ Denise M. Mingrone*_____
DENISE M. MINGRONE
Attorneys for Plaintiff SYNOPSYS, INC.

ORRICK, HERRINGTON & SUTCLIFFE LLP
ATTORNEYS AT LAW
SILICON VALLEY

4128-7621-3534

20

PLAINTIFF'S EX PARTE MOTION FOR TRO; OSC RE PI; AND ORDER FOR EXPEDITED DISCOVERY
CASE NO. 3:19-CV-01443-BEN-AGS