Jean-Paul Ciardullo (CA Bar No. 284170)
jciardullo@foley.com
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, CA 90071-2411
Telephone: 213-972-4500
Facsimile: 213-486-0065

Kadmiel E. Perez (CA Bar No. 318719)
kperez@foley.com
**FOLEY & LARDNER LLP**
3579 Valley Centre Drive, Suite 300
San Diego, CA 92130
Telephone: 858-847-6700
Facsimile: 858-792-6773

*Attorneys for Defendant*
*AzurEngine Technologies, Inc.*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

SYNOPSYS, INC.

*Plaintiff,*

v.

AZURENGINE TECHNOLOGIES, INC., a Delaware Corporation, and DOES 1-10, inclusive,

*Defendants.*

Case No: 3:19-cv-01443-AJB-AGS

**AZURENGINE TECHNOLOGIES, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR (1) TEMPORARY RESTRAINING ORDER; (2) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION; AND (3) ORDER FOR EXPEDITED DISCOVERY**

[*No hearing yet set*]
Judge: Hon. Anthony J. Battaglia
Courtroom: 4A

ACTION FILED: August 1, 2019

## TABLE OF CONTENTS


I. INTRODUCTION .................... 1

II. FACTUAL BACKGROUND .................... 2

A. AzurEngine's Innovative Start-Up Chipset Business .................... 2

B. AzurEngine's Use Of Synopsys Software Tools Has Been Pursuant To What It Has Understood To Be A Valid License .................... 2

C. AzurEngine Had No Prior Warning Of Suit, And Only Just Retained Litigation Counsel .................... 3

D. An Injunction Now Could Be Devastating To AzurEngine .................... 3

III. APPLICABLE LAW .................... 4

IV. ARGUMENT .................... 5

A. Synopsys Rushed To Court Unnecessarily .................... 5

B. Further Investigation Is Needed To Ascertain Whether AzurEngine May Have A License Defense .................... 6

C. Further Analysis Is Needed To Ascertain The Effect Of The Cross-Border Nature Of The Alleged DMCA Violations .................... 7

D. Synopsys Has Not Established Irreparable Injury From AzurEngine's Use Of Its Software, Even If Such Use Turned Out To Be Unlicensed .................... 7

E. The *InnoGrit* Preliminary Injunction .................... 9

F. AzurEngine Would Be Significantly Injured By An Injunction, And Synopsys Must Be Prepared To Post A Bond If It Wishes To Proceed .................... 10

G. Expedited Discovery Is Not Warranted .................... 11

H. Synopsys' Request For An Order To Show Cause Regarding A Preliminary Injunction Is Improper .................... 12

V. CONCLUSION .................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) .......... 4

*Elements Spirits, Inc. v. Iconic Brands, Inc*., No. CV 15-02692 DDP (AGRx), 2015 U.S. Dist. LEXIS 75986 (C.D. Cal. June 11, 2015).......... 10

*Granny Goose Foods, Inc. v. Bhd. of Teamsters &Auto Truck Drivers*, 415 U.S. 423 (1974).......... 4

*League of Women Voters of Ariz. v. Reagan*, No. CV-18-02620-PHX-JAT, 2018 U.S. Dist. LEXIS 159302 (D. Ariz. Sep. 18, 2018) .......... 13

*Midwest Sign & Screen Printing Supply Co. v. Robert Dalpe & Laird Plastics, Inc*., No. 19-cv-00967 (ECT/SER), 2019 U.S. Dist. LEXIS 79452 (D. Minn. May 10, 2019).......... 11

*Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc*., No. 1:17-cv-00949-LJM-DML, 2017 U.S. Dist. LEXIS 71940 (S.D. Ind. May 11, 2017) .......... 12

*Esquire Props. Trading v. Starmax Enters*., No. CV 14-09379 MMM (AJWx), 2014 U.S. Dist. LEXIS 198858 C.D. Cal. Dec. 8, 2014) .......... 5

*Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113 (9th Cir. 2005) .......... 4

*St. Jon v. Tatro*, No. 15-cv-2552-GPC-JLB, 2016 U.S. Dist. LEXIS 5036 (S.D. Cal. Jan. 13, 2016).......... 5

*Subafilms, Ltd. v. MGM-Pathe Communications Co*., 24 F.3d 1088 (9th Cir. 1994) .......... 7

*Synopsys, Inc. v. Innogrit, Corp*., No. 19-CV-02082-LHK, 2019 U.S. Dist. LEXIS 68935 (N.D. Cal. Apr. 23, 2019) .......... 1, 9

*Synopsys, Inc. v. Innogrit, Corp.*, No. 19-CV-02082-LHK, 2019 U.S. Dist. LEXIS 68935 (N.D. Cal. June 26, 2019) .......... 9

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO (LB), 2018 U.S. Dist. LEXIS 14147 (N.D. Cal. Jan. 29, 2018) .......... 7

*Total Access Payments, Inc. v. Maximum Bus. Innovations, Inc.*, No. CV 10-5475-GHK(RCx), 2010 U.S. Dist. LEXIS 153036 (C.D. Cal. Aug. 3, 2010) .......... 11

*United Westlabs, Inc. v. Seacoast Lab. Data Sys.*, No. CV08-08649-CJC(RNBX), 2010 WL 11515301 (C.D. Cal. Jan. 7, 2010) .......... 6

*Yaldo v. Wayne State Univ.*, No. 15-cv-13388, 2015 U.S. Dist. LEXIS 140175 (E.D. Mich. Oct. 15, 2015) .......... 13

# I. INTRODUCTION

Defendant AzurEngine Technologies, Inc. ("AzurEngine") hereby respectfully opposes Plaintiff Synopsys, Inc.'s Motion for a Temporary Restraining Order, for an Order to Show Cause regarding a Preliminary Injunction, and for Expedited Discovery (Dkt. 4, "Motion"), which was filed four days prior to this brief on August 5, 2019.

The Motion is unwarranted, and should be denied in all respects for several reasons. First, by its own admission, Synopsys delayed two months before filing suit, undercutting its claim that emergency relief is now suddenly necessary. Second, despite having past contact with AzurEngine, Synopsys inexplicably elected to not simply pick up the phone during that two months to make a direct inquiry. If Synopsys had done so, it would have learned that AzurEngine has been remotely accessing computers at its China branch which it understands to be under a valid Synopsys license. Moreover, as attested herein, AzurEngine has no intention of infringing on any of Synopsys' intellectual property rights, and would have promptly investigated this matter and sought an amicable resolution without the need for court involvement, making the present "emergency" one purely of Synopsys' own creation.

Third, there is a legitimate question of whether, even if the software use were unlicensed, running the software on a computer in China gives rise to a valid DMCA claim in the United States. Fourth, Synopsys' claimed harms are abstract and conclusory, which is why another district court recently denied a similar temporary restraining order request by Synopsys in *Synopsys, Inc. v. Innogrit, Corp.*, No. 19-CV-02082-LHK, 2019 U.S. Dist. LEXIS 68935, at *5-9 (N.D. Cal. Apr. 23, 2019). Fifth, if AzurEngine's critical and time-sensitive development work were suddenly halted now, even if only for a short time, it would cause irreparable injury to AzurEngine's start-up business, and could lead to financial losses well in excess of $1 million. Sixth, AzurEngine has diligently implemented a litigation hold, and there is no basis to order intrusive and disruptive forensic inspections, particularly when the computers at issue are located in China, and Synopsys delayed two months in seeking the supposedly urgent discovery.

## II. FACTUAL BACKGROUND

### A. AzurEngine's Innovative Start-Up Chipset Business

Founded in 2016, AzurEngine is engaged in the design of cutting edge integrated chipsets. (Declaration of Yuan Li, "Li Dec.," ¶ 2.) AzurEngine has offices in San Diego, with a parent branch in Zhuhai, China, that has common management and coordinated operations. (*Id.*; *see also* www.AzurEngine.com/contact-us) AzurEngine is currently engaged on a major multi-million dollar chipset design project that is on a tight timetable, with important contractual project milestones this month and into the next several months. (Li Dec. ¶ 5.)

### B. AzurEngine's Use Of Synopsys Software Tools Has Been Pursuant To What It Has Understood To Be A Valid License

AzurEngine has been using the Synopsys software as a necessary and critical tool in its current chipset design project. (Li Dec. ¶ 5.) In 2018, AzurEngine's Zhuhai branch entered into a development agreement with a Chinese business partner for the purpose of assisting AzurEngine with its work. (Hereinafter, "Development Agreement.") (Li Dec. ¶ 3.) Because the Development Agreement contains strict confidentiality terms, and because AzurEngine has not yet had sufficient time to obtain any waiver of those terms, AzurEngine cannot yet share specific information about the Development Agreement or identify the business partner. (*Id.*) Pursuant to the Development Agreement, AzurEngine's business partner has purported to provide AzurEngine with valid licensed access to the Synopsys software at issue in this case.

AzurEngine believes that Synopsys may be independently aware of the Development Agreement, the identity of our business partner, and the software license, and may have been aware of this information for a long time. (*Id.*) Because of the short timeframe for preparing this briefing, AzurEngine has not yet been able to investigate the nature of its business partner's license from Synopsys, and so has relied on the representations of its business partner that the licenses validly allow AzurEngine to access and use the Synopsys software. (*Id.*) AzurEngine is currently conducting a

thorough investigation to confirm whether any other Synopsys software may have ever operated outside of the Development Agreement, but believes that it is the Development Agreement work that has given rise to the present dispute. (*Id.*)

AzurEngine is still investigating this matter, but based on currently available information, all of the Synopsys software is run off servers and computers that are located in China. (Li Dec. ¶ 4.) Several of AzurEngine's engineers in San Diego have remote access to those computers, which is typical of the company's operations with its China branch. (*Id.*) As discussed below, this may have relevance to liability.

**C. AzurEngine Had No Prior Warning Of Suit, And Only Just Retained Litigation Counsel**

At no time prior to the filing of Synopsys' August 1, 2019 complaint in this action did Synopsys contact AzurEngine about the purported unauthorized access of Synopsys software, much less indicate that a lawsuit would be filed. (Li Dec. ¶ 6.) On August 5, 2019, Synopsys provided AzurEngine's registered agent with notice of the present Motion, and AzurEngine rapidly engaged the undersigned litigation counsel on August 7, 2019 (two days before this brief). The pacing of events has left AzurEngine with very little time to properly investigate the allegations.

**D. An Injunction Now Could Be Devastating To AzurEngine**

As noted above, AzurEngine has been using the Synopsys software as a necessary and critical tool in a major circuit design project that is currently underway. (Li Dec. ¶ 5.) This project has numerous milestone deadlines in the coming months, including important major deadlines in August. (*Id.*) AzurEngine is rushing to try to find an alternative to accessing the Synopsys software, but if is unable to do so and becomes immediately enjoined, even a two weeks suspension of development could cause major delays, missed milestones, and significant costs to AzurEngine. (*Id.*) In particular, AzurEngine relies heavily on investors at this stage, and if AzurEngine is subjected to the extreme penalty of a court-ordered injunction (which would carry with it an unfair stigma), then regardless of the whether AzurEngine is later vindicated, AzurEngine may

never regain investor confidence. (*Id.*) This might cost AzurEngine millions of dollars in lost investment income. (*Id.*) Furthermore, failure to timely deliver chipsets under AzurEngine's project agreement could result in significant financial penalties under the development contract (*Id.*) Additionally, it is possible that some of AzurEngine's engineers might even leave the project if they are unable to work for two weeks or more. (*Id.*)

In total, AzurEngine estimates that the potential risk of the of a two week shutdown would amount to well over $1 million in foreseeable losses, while also causing AzurEngine irreparable injury in the form of loss of reputation with its business partners and investors. (*Id.*)

## III. <u>APPLICABLE LAW</u>

A temporary restraining order is an extreme remedy whose purpose is limited to preserving the status quo to prevent immediate and irreparable loss of rights prior a preliminary injunction hearing. *See* Fed. R. Civ. P. 65(b); *Granny Goose Foods, Inc. v. Bhd. of Teamsters &Auto Truck Drivers*, 415 U.S. 423, 439 (1974); *see also Caribbean Marine Serv. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Under the traditional test, a party must show: "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005). "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine,* 844 F.2d at 674.

Pursuant to Fed. R. Civ. P. 65(c), "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. "When setting the amount of security, district courts should err on the high side." *Signal Hill Serv. v. Macquarie Bank, Ltd.*, No. CV 11-01539 MMM (JEMx), 2011 U.S. Dist. LEXIS 165858, at *68 (C.D. Cal. June 29,

2011).

## IV. ARGUMENT

### A. Synopsys Rushed To Court Unnecessarily

In support of its Motion, Synopsys presents the Declaration of its Director of License Compliance, Normal F. Kelly. (Dkt. 4-2, "Kelly Decl.") Mr. Kelly testifies that he first discovered that AzurEngine was accessing Synopsys software two months ago in June 2019, and that he observed that AzurEngine had continued to access the software many times through July 31, 2019. (*Id.*, ¶ 8.) Mr. Kelly notes that AzurEngine is not itself a customer of Synopsys, but does not address whether there is a possibility that AzurEngine might otherwise have had a valid basis to access the software. (*Id.*, ¶ 6-7.) Mr. Kelly states that "upon information and belief" AzurEngine must have been using counterfeit license keys, but does not explain how he reached this conclusion apart from observing that AzurEngine was not itself a direct Synopsys customer. (*Id.*, ¶ 9.)

Also not explained in Mr. Kelly's Declaration is why Synopsys waited two months before taking any action. Such unexplained delay by a plaintiff undercuts claims of irreparable injury, and weighs against a temporary restraining order. *Esquire Props. Trading v. Starmax Enters.*, No. CV 14-09379 MMM (AJWx), 2014 U.S. Dist. LEXIS 198858, at *24 (C.D. Cal. Dec. 8, 2014); *St. Jon v. Tatro*, No. 15-cv-2552-GPC-JLB, 2016 U.S. Dist. LEXIS 5036, at *13-14 (S.D. Cal. Jan. 13, 2016).

Significantly, Synopsys also fails to explain why, when it finally did decide to take action after two months, it did not simply pick up the phone to call AzurEngine to inquire as to what was going on and investigate whether there might be an innocent explanation, as well as a possible means of resolving the matter amicably without suddenly rushing to court seeking an *ex parte* temporary restraining order. A temporary restraining order is extraordinary relief, and a party seeking extraordinary relief must be held to a standard of extraordinary care. *See, e.g.*, Hon. Anthony J. Battaglia Civil Case Procedures, Section III.1 ("**Before** filing any *ex parte* motion, counsel must contact the opposing party to **meet and confer** regarding the subject of the *ex parte* motion.") (emphasis added).

Beyond which, Synopsys – like any plaintiff – has an ethical obligation to conduct a diligent pre-filing investigation of facts that are reasonably available to it.

AzurEngine submits that it was improper for Synopsys to rush to court seeking a temporary restraining order when it had not yet even attempted to contact AzurEngine during the preceding two months that Synopsys was aware of the issue. Indeed, Synopsys and AzurEngine have had recent past amicable dialogues, so Synopsys knew exactly how to contact AzurEngine if it wanted to, making the failure to simply reach out all the more unfortunate. (Li Dec. ¶ 6.) In fact, it is possible that Synopsys has long known that AzurEngine was using the software pursuant to the Development Agreement, which is yet another undeveloped part of the factual record that makes a temporary restraining order premature. (Li Dec. ¶ 3.)

AzurEngine has no desire to infringe on any of Synopsys' intellectual property rights, and if Synopsys had simply called, AzurEngine would have investigated the matter and sought to reach an amicable solution without the need for litigation. (Li Dec. ¶ 6.)

### B. Further Investigation Is Needed To Ascertain Whether AzurEngine May Have A License Defense

Because Synopsys declined to contact AzurEngine for two months before filing this lawsuit and seeking a temporary restraining order, AzurEngine is now being forced to rush to understand the licensing situation when that investigation might otherwise have already been concluded weeks ago. As explained in the accompanying Li Declaration (¶ 3), it has been AzurEngine's understanding that it was using Synopsys software pursuant to a valid license through the Development Agreement with its business partner. Whether AzurEngine may have a valid license defense is thus a question that still needs to be investigated, and Synopsys necessarily has not shown a sufficient likelihood of success on the merits to warrant a temporary restraining order as long as the license question remains unresolved. *See United Westlabs, Inc. v. Seacoast Lab. Data Sys.*, No. CV08-08649-CJC(RNBX), 2010 WL 11515301, at *3 (C.D. Cal. Jan. 7, 2010) (whether

circumvention of security protocols is permissible "is dependent on the scope of the license agreement, which must be determined at trial based on a complete evidentiary record.")

**C. Further Analysis Is Needed To Ascertain The Effect Of The Cross-Border Nature Of The Alleged DMCA Violations**

Even if AzurEngine lacked a proper license (which has yet to be determined), an important question would remain in this case regarding the extent of liability for purported acts of DMCA circumvention occurring outside the United States. The DMCA only applies to US conduct, and is strictly limited territorially. *Subafilms, Ltd. v. MGM-Pathe Communications Co*., 24 F.3d 1088 (9th Cir. 1994) (en banc). Here, the access to Synopsys software occurred overseas in China. (Section II.B, *supra*.) In another recent Synopsys case, *Synopsys, Inc. v. Ubiquiti Networks, Inc*., No. 17-cv-00561-WHO (LB), 2018 U.S. Dist. LEXIS 14147, at *8 (N.D. Cal. Jan. 29, 2018), the court wrestled with whether remote access to Taiwanese computers running Synospsys software constituted a DMCA violation or not, ultimately leaving the question undecided for purposes of the discovery motion before it. It would be improper to issue a temporary restraining order based on an incomplete factual record and unresolved questions of law. AzurEngine should be permitted to fully address and investigate these matters in the normal course.

**D. Synopsys Has Not Established Irreparable Injury From AzurEngine's Use Of Its Software, Even If Such Use Turned Out To Be Unlicensed**

Without any record evidence citations, Synopsys argues that: "AzurEngine's extensive and ongoing piracy irreparably harms Synopsys by repeatedly accessing and using Synopsys' intellectual property without a license, undermining the value of Synopsys' copyrighted works and its ability to effectively negotiate with customers who intend to use its software. Synopsys also suffers the loss of customer goodwill and confidence when its software is accessed without authorization." (Motion, p. 11.)

As a threshold matter, Synopsys' arguments suffer an evidentiary problem. The only evidence to support them is the Kelly Declaration. However, that Declaration lays

no foundation for how Mr. Kelly – as Director of License Compliance – has any personal knowledge of the financial impact to Synopsys from unlicensed access to its software. Indeed, Mr. Kelly qualifies that the scope of his knowledge is "investigating software piracy, analyzing and interpreting call-home data and artifacts related to unauthorized use of Synopsys software, and helping to direct the work of other investigators and forensic analysts charged with investigating unauthorized use of Synopsys software." (Kelly Decl., ¶ 2.) The most Mr. Kelly ultimately says concerning harm to Synopsys is: "The diminution in value of Synopsys' copyrights in its EDA software, including the harm to its market share and revenue stream, will continue should AzurEngine's unlawful access and use of Synopsys software be allowed to continue unabated." (Kelly Decl., ¶ 11.) But this is a conclusory statement without explanation.

Furthermore, there is no evidence in support of the proposition that AzurEngine's access *in particular* would cause the claimed harms. Instead, Synopsys makes generalized attorney argument assertions about the purported effects of unauthorized access in the abstract. Without such a basic evidentiary foundation, Synopsys' arguments about purported immediate irreparable injury must fail.

Finally, it is entirely unclear how AzurEngine's continuing to use Synopsys software (*i.e.*, the status quo) for the period of time that would otherwise be covered by a temporary restraining order would cause *any* quantifiable injury to Synopsys (other than perhaps modest lost licensing revenue from AzurEngine) – much less irreparable injury – even if such usage were ultimately determined to not be covered by a license. Indeed, one would assume that Synopsys' remedy in the event of infringement would be simply based upon quantifiable lost licensing revenue, which, because it can be readily calculated, is not irreparable in nature. Synopsys does not address this issue in its Motion.

In addition to being unsupported by evidence, Synopsys' claimed harms are abstract and attenuated. That is why, just a few months ago, a Northern District of California court denied Synopsys' request for a temporary restraining order in the face of

virtually identical allegations by Synopsys. *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 U.S. Dist. LEXIS 68935, at *5-9 (N.D. Cal. Apr. 23, 2019). This Court need look no further than that decision to deny Synopsys' present Motion.

The cases cited by Synopsys in its Motion are distinguishable because they concerned rampant, ongoing, and widespread dissemination of copyrighted material. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 853 (9th Cir. 2017) (infringing movies being actively disseminated to large customer base); *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285–86 (2d Cir. 2012) (streaming to many customers); *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1017 (9th Cir. 2001) (free public music downloads online); *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085, 1107-08 (N.D. Cal. 2004) (dissemination of tools allowing consumers to make unlawful DVD copies). In the present case, by contrast, the alleged DMCA violations are confined to AzurEngine for its own private development project, and AzurEngine is unware of any dissemination third parties. (Li Dec. ¶ 7.)

**E. The *InnoGrit* Preliminary Injunction**

Although the court in the *InnoGrit* case denied Synopsys' request for a temporary restraining order, it ultimately granted Synopsys' request for a preliminary injunction, and Synopsys unsurprisingly relies on that ruling heavily in its present Motion. *Synopsys, Inc. v. InnoGrit, Corp.*, No. 19-CV-02082-LHK, 2019 U.S. Dist. LEXIS 107215 (N.D. Cal. June 26, 2019) ("*InnoGrit* Case"). However, that reliance is misplaced here. First, the temporary restraining order motion was denied in that case, and the preliminary injunction was only granted on a more expansive evidentiary record that does not exist here, showing substantial misconduct. (*Id.*, *5-7.) Second, the *InnoGrit* Case concerned blatant misconduct in deliberately cracking Synopsys license keys (*id.*), whereas here, AzurEngine believes that it has had valid access. Third, the question of the scope of AzurEngine's business partner's license has not yet been address, whereas in the InnoGrit case, the terms of the license were known and argued to the court. Fourth, AzurEngine has herein raised a question of law regarding the import of

remote access to Chinese computers (Section IV.C, *supra*), whereas the acts of circumvention in *InnoGrit* occurred in the United States, so this additional legal issue was not implicated. *InnoGrit* Case at *5-7. Fifth, InnoGrit's opposition to the preliminary injunction motion was threadbare, and focused heavily on arguing that Irish law should apply. (*See InnoGrit* Case Docket, InnoGrit 5-page brief on May 14, 2019.) AzurEngine should not be lumped in with InnoGrit in this regard, and is entitled to present its own arguments and defenses, which are different in nature than InnoGrit's. Finally, the InnoGrit court noted that "Defendant's brief fails to identify any damage it might suffer if an injunction is granted." *InnoGrit* Case at *10. This is entirely unlike the present case, in which AzurEngine has attested to the very significant harms that a temporary restraining order could cause.

In sum, the grant of a preliminary injunction in the *InnoGrit* Case does not support the grant of a temporary restraining order in the present case.

### F. AzurEngine Would Be Significantly Injured By An Injunction, And Synopsys Must Be Prepared To Post A Bond If It Wishes To Proceed

As discussed in Section II.D, *supra*, AzurEngine stands to be significantly harmed by a temporary restraining order, in an amount well over $1 million, in addition to the irreparable loss of reputation that would accompany the stigma of having been subjected to such an extraordinary injunction. Where the potential harms are so lopsided against the defendant, a temporary restraining order should not issue. This is particularly the case were, as here, the plaintiff is vastly larger company than the defendant, with Synopsys being "the fifteenth largest software company in the world [] currently employ[ing] over 13,000 employees worldwide" (Motion, p. 3). *See Elements Spirits, Inc. v. Iconic Brands, Inc.*, No. CV 15-02692 DDP (AGRx), 2015 U.S. Dist. LEXIS 75986, at *29 (C.D. Cal. June 11, 2015) ("the larger, more established brand must bear the hardship of competition") (denying preliminary injunction in intellectual property case). AzurEngine, meanwhile, is a much smaller and newer company that is heavily dependent on investors and not self-sustaining.

While AzurEngine argues that the temporary restraining order should be denied on the merits, in the alternative, AzurEngine respectfully requests, pursuant to Rule 65(c), that the Court condition the issuance of any temporary restraining order on Synopsys first posting a $1 million bond.

**G. Expedited Discovery Is Not Warranted**

Synopsys seeks expedited discovery to forensically image and examine all AzurEngine computers that have accessed Synopsys software. (Motion, p. 17.) Synopsys says that the expedited forensic discovery is necessary to (1) "identify the scope and extent of AzurEngine's unauthorized use of Synopsys EDA software so Synopsys can protect itself and its intellectual property," and (2) "[m]ost importantly, [to] enable critical evidence to be preserved and reveal whether AzurEngine has disseminated Synopsys' proprietary software to other unauthorized users." (*Id.*) There are several reasons why Synopsys' request should be denied.

First, the stated justification of "identify[ing] the scope of use" of Synopsys software is not a matter that calls for expedited discovery. Indeed, that is precisely the subject matter that *ordinary* discovery would be directed to in the case, and Synopsys has not offered any explanation for why it needs to understand that scope of use now rather than later. *Total Access Payments, Inc. v. Maximum Bus. Innovations, Inc.*, No. CV 10-5475-GHK(RCx), 2010 U.S. Dist. LEXIS 153036, at *4-5 (C.D. Cal. Aug. 3, 2010) (denying expedited discovery where no explanation given as to why the discovery could not wait). Nor has Synopsys explained how expedited access to AzurEngine's computers will help it "protect itself" in this context.

Second, with respect to the stated justification of preserving evidence, Synopsys has not provided any evidence to show that AzurEngine is at risk of spoliating relevant records. Quite to the contrary, AzurEngine has diligently implemented a litigation hold (Li Dec., ¶ 7), and should be presumptively trusted to abide by its litigations just like any other litigant. *Midwest Sign & Screen Printing Supply Co. v. Robert Dalpe & Laird Plastics, Inc.*, No. 19-cv-00967 (ECT/SER), 2019 U.S. Dist. LEXIS 79452, at *43 (D.

Minn. May 10, 2019) ("The Parties have already implemented litigation holds. There is no evidence suggesting a risk of spoliation.") (denying expedited discovery); *Roche Diagnostics Corp. v. Binson's Hosp. Supplies, Inc*., No. 1:17-cv-00949-LJM-DML, 2017 U.S. Dist. LEXIS 71940, at *3-4 (S.D. Ind. May 11, 2017) (no evidence to support speculation about spoliation) (denying expedited discovery). There is likewise no evidence to suggest that "AzurEngine has disseminated Synopsys' proprietary software to other unauthorized users," and indeed AzurEngine has now clarified that it has not. (Li Dec. ¶ 7.)

Third, Synopsys' own delay in seeking relief undercuts its claim that expedited discovery is necessary. If Synopsys has known since June that AzurEngine was accessing its software, Synopsys could have sought relief in June to address it (or simply have contacted AzurEngine). That Synopsys instead waited two months to do anything belies any claim that expedited discovery is now suddenly urgently needed.

Fourth, because the software in question was operated on computers located in China, Synopsys' proposed imaging of San Diego computers will not accomplish what Synopsys say it will accomplish. Nor is it clear that the Court would have jurisdiction to order a business in China to open its doors to admit forensic inspectors.

Finally, as Dr. Li attests in his Declaration (¶7), Synopsys's proposed forensic imaging would be highly disruptive and costly for AzurEngine

**H. Synopsys' Request For An Order To Show Cause Regarding A Preliminary Injunction Is Improper**

Although the Conclusion section of Synopsis' Motion includes an off-handed request to the Court to "issue an order to show cause as to why AzurEngine should not be enjoined throughout and pending the outcome of this litigation," Synopsis' Motion does not otherwise address the requested preliminary injunction, or cite any law in support of it. In fact, it is entirely improper for Synopsis to try to shift the burden to AzurEngine in this manner. The burden of proving entitlement to the extraordinary relief of a preliminary injunction rests squarely on Synopsys – it is not for AzurEngine to have to

prove why it should not suffer an injunction through trial, particularly where Synopsys has not even made a proper threshold showing of entitlement to a temporary restraining order. *League of Women Voters of Ariz. v. Reagan*, No. CV-18-02620-PHX-JAT, 2018 U.S. Dist. LEXIS 159302, at *1 n.1 (D. Ariz. Sep. 18, 2018) ("Plaintiffs cannot shift their burden of showing they are entitled to a preliminary injunction to Defendant[] via a show cause request."); *Yaldo v. Wayne State Univ.*, No. 15-cv-13388, 2015 U.S. Dist. LEXIS 140175, at *10-11 (E.D. Mich. Oct. 15, 2015) ("Since Rule 65 does not allow Plaintiff to shift the burden of proof onto non-moving parties, the Court will deny his request for an Order to Show Cause.").

If a preliminary injunction is to be sought here, it should proceed in the normal course, rather than placing AzurEngine at the disadvantage of attempting to defend itself without first having the full picture of Synopsys' own arguments. Indeed, AzurEngine has been taken quite by surprise by Synopsys' sudden legal action, and as discussed above, significant factual and legal question have been presented. Because Synopsys has already been engaged in significant other litigation regarding the same and similar issues, it undoubtedly already knows exactly what it intends to argue, and should not "hide the ball" (as it appears to have done with its present Motion, which includes only a minimal record). Rather, if Synopsys wishes to pursue a preliminary injunction, it should put all of its cards on the table by filing moving papers that present all of its relevant facts and legal arguments (as informed now by the information provided by AzurEngine herein). AzurEngine will then be able to fully and fairly respond, to the extent it is not otherwise able to reach a resolution with Synopsys.

## V. <u>CONCLUSION</u>

For the foregoing reasons, AzurEngine respectfully requests that Synopsys' Motion be denied in its entirety, and that the case proceed in the normal course.

Dated: August 9, 2019

RESPECTFULLY SUBMITTED,

/s/ *KADMIEL E. PEREZ*

Kadmiel E. Perez
Jean-Paul Ciardullo
**FOLEY & LARDNER LLP**

*Attorneys for Defendant*
*AzurEngine Technologies, Inc.*